UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANIEL STOUT, ET AL. | * | CIVIL ACTION NO. 08-4409 |
| Plaintiffs | * | SECTION "R" |
| VERSUS | * | JUDGE VANCE |
| NATIONAL CASUALTY COMPANY, ET AL. | * | MAGISTRATE NO. 3 |
| Defendants | * | MAGISTRATE KNOWLES |
| | * | A JURY IS DEMANDED |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE**

NOW INTO COURT, through undersigned counsel, come Defendants, Demingo Johnson Western Express, Inc., and National Casualty Company, who submit the following Memorandum in Support of their Motion for Leave to File First Supplemental and Amending Answer:

**I.   FACTUAL BACKGROUND**

As this Court and all parties are well aware, one of the central topics in dispute regarding this motor vehicle accident is the fault that should be assigned to plaintiff, Daniel Stout, related to the operation of his vehicle and his diminished capacity at the time of the accident. The medical records produced in discovery, in particular the toxicology screen performed as part of Daniel Stout's emergency room treatment, reveal the presence of several medications, including

hydrocodone and dihydrocodine.[1] The effects of dihydrocodine include drowsiness and dizziness.[2] Additionally, when taken with hydrocodone, dihydrocodine enhances the central nervous system depression effects of hydrocodone.[3] Such effects may impact an individual's reaction time and awareness when operating a motor vehicle. For these reasons, dihydrocodine is classified as a controlled substance under state and federal laws.[4]

Under La. R.S. 9:2798.4, an affirmative defense is available to a defendant in a motor vehicle accident which will bar recovery by a motorist who operates a motor vehicle while under the influence of an intoxicant and who is determined to be in excess of twenty-five percent negligent when that negligence is a contributing factor causing damage to the motorist. Subsection A of this statute provides that an intoxicant can be either alcohol or "any controlled substance described in R.S. 14:98(A)(1)(c) or R.S. 40:964." La. R.S. 40:964 contains a listing of controlled substances by schedule; dihydrocodine is listed as a Schedule II opiate.

La. R.S. 9:2798.4 specifically provides that the immunity will not apply if the motor vehicle operator tests positive for an enumerated controlled substance for which he has a valid prescription. While there are extensive records of Daniel Stout obtaining prescriptions for many medications, there is no indication in any of Daniel Stout's medical or prescription records that

---

[1] *See*, Exhibit 1, Laboratory Results and drug screen of Daniel Stout, July 8, 2008.

[2] Side effects of dihydrocodine include: blurred vision; constipation; dizziness; drowsiness; exaggerated sense of well-being; feeling unwell or unhappy; flushing; lightheadedness; mental or mood changes; nausea; nervousness or anxiety; stomach pain; vision changes; vomiting. http://www.drugs.com/sfx/acetaminophen-caffeine-dihydrocodeine-side-effects.html#ixzz0n5r25raP

[3] Nervous system side effects of dihydrocodeine have included lightheadedness, dizziness, drowsiness, headache, sedation, and confusion. http://www.drugs.com/sfx/acetaminophen-caffeine-dihydrocodeine-side-effects.html#ixzz0n5qc0S2x

[4] La. R.S. 40:964; 21 CFR 1308.12(c).

-2-

he was ever prescribed or given dihydrocodine. However, prescription records of Gerri Stout that have been recently obtained from Wal-Mart do confirm that she was prescribed a large amount of Marcof, a narcotic anti tussive expectorant approximately six months prior to the accident.[5] It is not clear whether the positive result for dihydrocdine is related to Daniel Stout's use of his wife's prescribed medication or is related to some other source. However, the revelation provided by these newly produced records, and the absence of a valid prescription for dihydrocodine in Daniel Stout's records, has led to the reasonable belief of Defendants that the affirmative defense provided by La. R.S. 9:2798.4 is appropriate in the instant case. At the time that Defendants filed their original Answers to Plaintiffs' Complaint, the contents and significance of the medical and pharmacy records were not apparent, as discovery was necessary to obtain a full understanding of Daniel Stout's medical history and determine if any medications present in his system were there without valid prescription.

## II. LAW AND ARGUMENT

Under Federal Rule of Civil Procedure 15(a)(2), a Court "should freely give leave" to a party to amend a pleading "when justice so requires." When a Court allows leave for a defendant to amend to assert an affirmative defense, the plaintiff must be given a fair chance to answer the newly asserted defense by having an opportunity to gather and present such evidence in response to the assertion. In this case, the proposed affirmative defense is not one that is factually intensive, but rather is the assertion of a legal immunity granted by the Louisiana legislature. Trial in this matter is set for October 18, 2010, and the discovery cutoff is August

---

[5] Exhibit 2, prescription records of Daniel Stout and Gerri Stout produced by Wal-Mart on March 22, 2010 in response to subpoena.

31, 2010. Plaintiffs are continuing to treat with medical providers, and expert reports for Plaintiffs and Defendants are due on July 1 and August 1, respectively. As discovery in this case is still ongoing, and as and expert report deadlines for all parties are not imminent, Defendants submit that there is no prejudice to Plaintiffs with this amendment.

The Fifth Circuit has definitively held that district courts should allow amendment of an answer by a defendant in order to assert an affirmative defense where there is no prejudice to the plaintiff. In the oft-cited decision of *Allied Chemical Corporation v. Mackay*, 695 F.2d 854 (5th Cir. 1983), the court affirmed the trial court's permitting the defendant to raise the affirmative defense of the Mississippi usury statute for the first time in a motion for summary judgment, rejecting the argument that an affirmative defense is waived if not asserted in the original Answer. Discussing the facts of that contract dispute case, the *Allied Chemical* court wrote: "Federal Rule of Civil Procedure 8(c) requires any matter constituting an affirmative defense to be set forth in a defendant's responsive pleading. Failure to follow this rule generally results in a waiver. Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal."[6] The court found that there was no surprise in the raising of the usury statute, as the defendant "raised the issue at a pragmatically sufficient time", and the plaintiff "was not prejudiced in its ability to respond."[7] The court concluded by stating: "Construing the Rules to do substantial justice, we hold that the usury defense was not waived."

---

[6] 695 F.2d at 855–856, *citing*, Wright and Miller, Federal Practice and Procedure: Civil § 1278; *Jones v. Miles*, 656 F.2d 103, 107 n. 7 (5th Cir.1981).

[7] 695 F.2d at 856,

In *Pasco ex. rel. Pasco v. Knoblauch*, 566 F.3d 572 (5th Cir. 2009), the Fifth Circuit reversed the ruling of the district court that ruled an affirmative defense of qualified immunity was waived as untimely under Rule 8(c) because it was first raised in a motion for summary judgment filed fifty-two (52) months after the first responsive pleading. In that case, a survival action brought under § 1983 against a police officer arising out of the death of the plaintiff during a high speed chase, the Fifth Circuit rejected the finding of the district court that the 52 month delay presumptively prejudiced the plaintiff. The court wrote: ". . . under Rule 8(c) we do not take a formalistic approach to determine whether an affirmative defense was waived. Rather, we look to the overall context of the litigation and have found no waiver where no evidence of prejudice exists and sufficient time exists to respond to the defense remains before trial."[8] Looking to the facts of that case, the court found that the affirmative defense of qualified immunity on behalf of the officer was asserted two months before discovery was due, and that the plaintiff had the opportunity and did fully brief the issue to the court. Finding no prejudice to the plaintiff, the *Pasco* court reversed the ruling of the district court and found the assertion of the affirmative defense to be proper.

On multiple other occasions the Fifth Circuit has re-affirmed the propriety of allowing an affirmative defense to be raised at trial despite the failure of a defendant to assert same in accordance with the requirements of Rule 8(c). *See, e.g., Rogers v. McDorman*, 521 F.3d 381 (5th Cir. 2008) (affirmative defense of *in pari delicto* in civil RICO action permitted at trial although not pled in accordance with Rule 8(c), as defendants had "specifically raised" the conduct of plaintiffs in pretrial pleadings and included defense in pretrial order); *Giles v. Gen.*

---

[8] 566 F.3d at 577

*Elec. Co.*, 245 F.3d 474 (5th Cir. 2001) (rejecting argument that an affirmative defense of offset of disability pension benefits was waived under Rule 8(c), finding no prejudice because the issue was raised by plaintiffs prior to trial in a motion *in limine* and by objections to certain trial exhibits); *Lubke v. City of Arlington*, 455 F.3d 489 (5th Cir. 2006) (rejecting argument of waiver of affirmative defense of offset of retirement plan payout as not pled, finding no prejudice as both parties addressed issue in motions *in limine*); *Alliance Versicherungs, AG v. Profreight Brokers, Inc.*, 99 F.Appx. 10 (5th Cir. 2004) (unpublished) (finding no waiver of un-pled affirmative defense of contractual limitation of liability because issue was first raised in pre-trial order which gave plaintiff "three months to consider and prepare for the limitations defense").

In the instant case, Plaintiffs have certainly been on notice of the potential affirmative defense provided by La. R.S. 9:2798.4. The diminished capacity of Daniel Stout due to the presence of medications, and the impact of that diminished capacity on his contribution to the accident, has been at issue since the inception of this litigation. Specifically, in the original Answers filed by all Defendants, the "First Affirmative Defense" of each pleading is asserted as follows: **"Defendants affirmatively allege plaintiffs' comparative fault."**[9] Further, the issue of Daniel Stout's diminished capacity as a result of the presence of controlled substances in his system at the time of the accident was specifically raised by Defendants in briefing filed in November 2009 in response to the Motion in Limine filed by Plaintiffs to exclude reference to their failure to wear seat belts and to strike any other reference to comparative negligence.[10]

---

[9] R. Doc 7 at 1; R. Doc 22 at 1.

[10] R. Doc. 81, Defendants' Opposition Memorandum to Plaintiffs' Motion in Limine at p. 3-4 ("Plaintiff was operating the vehicle at a diminished capacity . . . when plaintiff's blood was tested at the

Through briefing and argument on that motion, including briefing and argument on reconsideration of that motion, Plaintiffs were certainly put on notice of the issue of Daniel Stout's diminished capacity and related presence of controlled substances.[11] Since that time, almost six months ago, Plaintiffs were aware that this topic was at issue and have had ample opportunity to prepare a response to this affirmative defense. The assertion of an affirmative defense rooted in comparative fault and provided by Louisiana law by the instant pleading does not raise any new issue for Plaintiffs.

The relevant inquiry in allowing an amendment to add an affirmative defense is whether a plaintiff will be prejudiced by its assertion. In the *Rogers v. McDorman* decision cited above, the Fifth Circuit clarified the "prejudice" element in rejecting arguments that the assertion of the affirmative defense in that case should not have been allowed. The *Rogers* court explained as follows: "the prejudice inquiry considers whether the plaintiff had sufficient notice to prepare for and contest the defense, and not simply whether the defense, and evidence in support of it, were detrimental to the plaintiff (as every affirmative defense is)."[12] Given the amount of time remaining for all parties to complete discovery and prepare for trial, as well as the central nature of the issue of comparative fault throughout this matter to this point, Defendants submit that Plaintiffs will not be prejudiced by this amendment.

---

hospital, it was found to be positive for benzodiazepines and opiates, which the emergency room doctor conceded could impair one's ability to drive.")

[11] As noted above, Defendants did not formally plead the affirmative defense of La. R.S. 9:2798.4 at the time of briefing on that Motion in Limine, as it appeared to be the case that Daniel Stout had been prescribed all of the controlled substances that appeared on that toxicology screen. As discovery has progressed, and as complete pharmacy records have been obtained, it has become clear that Daniel Stout did not have a prescription for dihydrocodine, triggering the applicability of this affirmative defense.

[12] 521 F.3d at 387.

Defendants are not raising this affirmative defense for the first time on a dispositive motion, motion *in limine*, or in the pre-trial order (each of which has been affirmed as proper by the Fifth Circuit), but are asserting matter far in advance of any significant deadlines. The United States Supreme Court has stated that the purpose of Rule 8(c) is "to give the opposing party notice of the issue and an opportunity to argue its position."[13] All parties in the instant matter have long been aware of the issue raised by the proposed affirmative defense, as the question of Daniel Stout's capacity and comparative fault related to the accident has long been a central issue for discovery and trial. Plaintiffs have ample opportunity to conduct discovery and develop facts to enable them to argue their position on this issue at trial.

As such, Defendants pray that this Honorable Court construe the Rules to "do substantial justice" and allow amendment under Rule 15(a)(2) as described above with the filing of the attached First Supplemental and Amending Answers of Defendants.

Respectfully submitted,

/s/Kyle P. Kirsch
MICHAEL R. SISTRUNK (12111)
KYLE P. KIRSCH (26363)
McCRANIE, SISTRUNK, ANZELMO,
HARDY, McDANIEL & WELCH
400 Lafayette Street, Suite 100
New Orleans, Louisiana 70130
Telephone: (504) 831-0946
Facsimile: (504) 529-9796

---

[13] *Blonder-Tongue Lab v. University of Illinois Foundation*, 402 U.S. 313, 350 (1971).

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on counsel of record this 6th day of May, 2010, in accordance with the Court's ECF Rules.

                /s/ Kyle P. Kirsch