UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANIEL STOUT, ET AL.                                CIVIL ACTION

VERSUS                                              NO. 08-4409

NATIONAL CASUALTY COMPANY, ET AL.                   SECTION "R" (3)

ORDER

On May 26, 2010, defendants' Motion for Leave to File First Supplemental and Amending Answer [Doc. #148] came on for hearing before the undersigned. Present were Michael Hingle on behalf of plaintiffs and Kyle Kirsch on behalf of defendants Western Express, Inc. and Demingo Johnson. After the oral hearing, the Court took the motion under advisement. Having reviewed the pleadings, the memoranda and the case law, the Court rules as follows.

I.  **Background**

This is a personal injury action filed after a 2007 Freightliner owned by defendant Western Express, Inc. and driven by defendant Demingo Johnson allegedly struck plaintiffs' car. Plaintiffs – "thrown about in the car" – allegedly suffered and continue to suffer personal, psychological and emotional injuries.

II.  **The Parties' Contentions**

A.  **Defendants' Motion**

Defendants note that since the beginning of this lawsuit, the contributory fault of plaintiff Daniel Stout and his diminished capacity at the time of the accident have been at issue. A

toxicology screen taken after the accident allegedly reveals that Stout had hydrocodone and dihydrocodeine in his system at the time of the accident. The effects of dihydrocodeine include drowsiness and dizziness and, when taken with hydrocodone, enhances the central nervous system depression effects of hydrocodone.

Under Louisiana Revised Statute § 9:2798.4, an affirmative defense is available to a defendant in a motor vehicle accident that will bar recovery by a motorist who operates a motor vehicle while under the influence of an intoxicant and who is determined to be in excess of 25% negligent when that negligence is a contributing factor that causes damage to a motorist. Dihydrocodeine is an intoxicant for which Stout had no prescription (which would bar the affirmative defense).

Defendants argue that under Rule 15, the Court should grant leave freely to amend. Defendants argue that plaintiffs will have an opportunity to respond to this legal (as opposed to factual) affirmative defense given the current deadlines in the Scheduling Order. Citing Fifth Circuit case law, defendants note that courts have allowed the late pleading of an affirmative defense as long as the defendant raises it at a pragmatically sufficient time and the plaintiff has the opportunity to respond. *See, e.g., Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572 (5th Cir. 2009) (allowing affirmative defense to be raised in motion for summary judgment 52 months after first responsive pleading and two months before discovery deadline); *Allied Chem. Corp. v. Mackay*, 695 F.2d 854 (5th Cir. 1983) (rejecting argument that affirmative defense waived if not raised in responsive pleading and allowing legal defense of usury to be raised for first time in motion for summary judgment).

Defendants argue that plaintiffs have been on notice of this defense since the inception of the lawsuit given that they have always pleaded the comparative fault of plaintiffs. Defendants also raised plaintiffs' comparative fault in their opposition to plaintiffs' motion in limine in November 2009.

Defendants contend that whether plaintiffs will be prejudiced is governed by whether plaintiffs have sufficient notice to prepare for and to contest the defense. Given the current schedule, defendants argue that plaintiffs have ample time to contest the defense. Defendants also note that they failed to raise the defense earlier because it appeared that Stout had prescriptions for all of his medication. Through discovery, however, defendants learned in March 2010 that he has no prescription for dihydrocodeine.

### B. Plaintiffs' Opposition

Plaintiffs note that they have deposed nine medical personnel. Should defendants now be able to amend their answer, plaintiffs argue that the additional time and cost to re-depose the medical personnel will surely prejudice them. Plaintiffs contend that given the expert report deadline of July 1, 2010, trial may have to again be continued if defendants are allowed to assert the new defense. Plaintiffs argue that there is no evidentiary support for an allegation of diminished capacity at the time of the accident.

Plaintiffs note that defendants received plaintiffs' medical records in September 2008. Defendants obtained the identical medical records again in May 2009 from the Louisiana State University Hospital. Plaintiffs note that the deadline to amend pleadings in the Scheduling Order was February 8, 2010. (The first deadline – before trial was continued – was June 2009.) Plaintiffs

argue that Rule 16 thus applies, and defendants have failed to establish good cause to amend the scheduling order.

Plaintiffs contend that they have not been on notice of this affirmative defense because there has been no evidence and no testimony that Stout suffered from diminished capacity at the time of the accident. Plaintiffs argue that simply mentioning "comparative fault" in an answer does not give plaintiffs notice that defendants will raise this affirmative defense. Plaintiffs contend that defendants never raised this affirmative defense in the opposition to the motion in limine (although the memoranda belie this statement).

Citing *Royal Insurance Co. of America v. Schubert Marine Sales*, No. Civ. A. 02-916, 2003 WL 21664701 (E.D. La. July 11, 2003), plaintiffs note that this Court has denied these types of motions before. In *Royal*, the court denied the motion to file an amended answer when the defendant filed the motion after the deadline and even though the defendant did not learn of its defense until after its expert inspected a yacht. *Id.* at *2. The court there noted that defendant's explanation as to its failure to timely file its motion was inadequate, and the information could have been obtained earlier. *Id.* Plaintiffs argue that their suit is identical to *Schubert*.

Plaintiffs note that the toxicology report reveals the presence of the two intoxicants but that Stout had been prescribed hydrocodone three days before the accident for an ankle injury. Plaintiffs argue that hydrocodone breaks down in the body into dihydrocodeine, which is then excreted. Immunity does not apply if there is a valid prescription, and Stout has a valid prescription for hydrocodone. The toxicology report also states that the results of the test are compatible with hydrocodone and dihydrocodeine, not that the two intoxicants are present. Plaintiffs also note that

4

the experts have testified that the initial emergency responders may have administered the intoxicants to him.

**C.    Defendants' Reply**

Defendants argue that only after receipt of subpoenaed prescription records were they able to determine the applicability of the affirmative defense. Defendants contend that that is good cause under Rule 16.

Defendants also contend that not one of the medical personnel that has been deposed have anything to do with the toxicology report. Defendants contend that the topic was explored during the deposition of Dr. Deblieux. Defendants assert that plaintiffs have ample time to retain a toxicology expert.

Defendants attempt to distinguish the *Royal* case by arguing that they simply had no access to the medical and prescription records of Stout. Defendants note that the Fifth Circuit has allowed amendments to answers much closer to trial.

**III.    Law and Analysis**

The Court finds that defendants have not demonstrated good cause to amend the Scheduling Order under the four-part test under Federal Rule of Civil Procedure 16. Defendants must satisfy the Rule 16 good-cause test because the amendment deadline in the scheduling order passed before they filed the instant motion. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). Federal Rule of Civil Procedure 16(b) governs the amendment of pleadings after a scheduling order's deadline to amend has expired. *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008). Rule 16(b) provides that once a scheduling order has been entered,

it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). It requires a party "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters.*, 315 F.3d at 535 (internal citations omitted). Four factors are relevant to good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S&W Enters.*, 315 F.3d at 536).

Defendants initially relied on the incorrect standard in Rule 15 and failed to demonstrate good cause why they should be allowed to amend their answer. In their reply and at oral argument, however, defendants argued that plaintiffs will suffer no prejudice given the current deadlines in the Scheduling Order. Defendants contend that should the Court grant the motion, all plaintiffs need to do is to determine whether Stout had a valid prescription for dihydrocodeine. The Court finds, however, that should it grant the motion, much more will be necessary on plaintiffs' part.

As evidenced by the oral argument, plaintiffs and defendants dispute the meaning and results of the toxicology report. It is also glaringly apparent that the parties hotly dispute how the dihydrocodeine -- should it even be dihydrocodeine -- ended up in Stout's bloodstream. Plaintiffs contend that it is a metabolite of hydrocodone and thus, merely a by-product of the drug for which Stout possessed a valid prescription. Defendants contend, on the other hand, that Stout was taking some of his wife's medications that contained dihydrocodeine. These disputes reveal that the retention of toxicology experts would be necessary should the Court grant the motion. The Court is reticent to do so one month before the deadline for plaintiffs' expert reports (July 1, 2010). The

6

parties' conduct and motion practice in this suit leads the Court to believe that the retention, necessary depositions of and the preparation of expert reports by any toxicology experts are unlikely to occur in the month-long timeframe available to plaintiffs. Given the discovery that has already occurred in this suit – and the parties' consistent discovery disputes – plaintiffs will be prejudiced in that there is not enough time to respond to this defense before their expert reports are due on July 1, 2010.

Moreover, defendants have known of the intoxicants' presence in Stout's system since, at the earliest, September 2008. Given that the scheduling order has been modified at least once, defendants missed both deadlines to amend their answer when they had the information necessary to do so (June 1, 2009 and February 8, 2010, respectively). The finding in the *Royal* case applies here: It is simply an inadequate excuse that defendants discovered that Stout had no prescription for dihydrocodeine after the deadline to amend pleadings. This information could have been discovered much sooner.

IV. **Conclusion**

Fore the foregoing reasons, defendants' Motion for Leave to File First Supplemental and Amending Answer [Doc. #148] is DENIED.

New Orleans, Louisiana, this 1st day of June, 2010.

*Daniel E. Knowles, III*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**